**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

JOHN MCCAUL,
  *Plaintiff,*

  v.

ARCHBISHOP SPALDING HIGH
SCHOOL, INC.*,*

  *Defendant*.

Civil No. ELH-25-3182

**MEMORANDUM OPINION**

John McCaul, plaintiff, worked for more than two years as the principal of defendant

Archbishop Spalding High School, Inc. ("Spalding" or the "School"), a private Roman Catholic

high school operated under the auspices of the Roman Catholic Archdiocese of Baltimore.  Prior

to the expiration date of plaintiff's employment agreement, the School terminated McCaul, citing

"a crisis of leadership."  ECF 1 ("Complaint"), ¶ 12.  Nevertheless, Spalding continued to pay

McCaul through the end of the contract period.  *See id.* ¶¶ 36–37.

McCaul has filed suit against Spalding, lodging only one claim, pursuant to the Maryland

Wage Payment and Collection Law ("MWPCL" or the "Wage Act"), Md. Code (2025 Repl. Vol.)

§§ 3-501–509 of the Labor and Employment Article ("L.E.").  ECF 1.[1]  Plaintiff alleges that the

School violated the Wage Act by disbursing his post-termination payments over a period of about

three and a half months, rather than in a single lump sum at the time of his termination.  ECF 1, ¶¶

40–43.  Plaintiff seeks treble damages of $137,342.40 plus attorneys' fees.  *Id.* ¶ 48.

---

[1] Plaintiff, who resides in Pennsylvania, asserts diversity jurisdiction under 28 U.S.C.
§ 1332.  ECF 1, ¶¶ 3, 6.

The Complaint is supported by several exhibits.  These include the "Lay Principal Ministry Employment Agreement" between McCaul and the School (ECF 1-3, "Employment Agreement" or "Agreement"); the School's "Non-Renewal Summary" for McCaul (ECF 1-4, the "Non-Renewal Summary"); the School's "Letter to Spalding Community" informing the community of McCaul's departure (ECF 1-5); McCaul's "Action Summary" regarding his health insurance coverage (ECF 1-6, "COBRA Notice"); e-mail correspondence between McCaul and employees from the School's Human Resources Department ("HR") (ECF 1-7); and McCaul's pay records from his employment with the School (ECF 1-8).

Spalding has moved to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF 9.  The motion is supported by a Memorandum.  ECF 9-1 (collectively, the "Motion").  The School advances two grounds to support the requested dismissal.  In particular, it contends that the First Amendment's ministerial exception deprives this Court of authority to adjudicate a suit between a Catholic school and one of its ministerial employees.  Further, the School argues that McCaul fails to state a cognizable claim under the MWPCL.

McCaul opposes the Motion.  ECF 12 ("Opposition").  In support of the Opposition, he submitted the Employment Agreement.  *See* ECF 12-1.  Spalding has replied.  ECF 15.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion, without prejudice.

## I.    Factual Background[2]

The School is a Catholic high school located in Severn, Maryland.  ECF 1, ¶ 4.  McCaul began his employment as the principal of Spalding on July 1, 2022.  *Id.* ¶ 8.  For the year 2024-

---

[2] As discussed, *infra,* at this juncture I must assume the truth of the facts alleged in the suit. *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019).  Therefore, the factual background is derived largely from the Complaint and certain exhibits, as discussed, *infra.*

2025, he was paid an annualized salary of $167,648, or $6,448.00 per biweekly pay period, plus benefits. *Id.*; *see* ECF 1-3, ¶¶ 4.1, 4.2.

McCaul executed the Employment Agreement on June 24, 2024, prior to the commencement of the 2024–25 academic year. *See* ECF 1-3 at 6.[3]  The Employment Agreement covered the period from July 1, 2024, through June 30, 2025. *Id.* ¶ 3.1. And, under Paragraph 3.2, the "Agreement shall expire at the end of its term", unless the parties "execute a written agreement to extend the term of the Agreement." *Id.* ¶ 3.2.

The Agreement specified that McCaul's duties were "an expression of the educational mission and ministry of the Roman Catholic Church to educate and form students in the Catholic faith," and that Spalding "exists to serve the Church's mission of evangelization," in which McCaul "ha[d] an essential role."    *Id.* ¶ 2.1.   Further, the Agreement provided that "one of [McCaul's] primary responsibilities [was] to serve as the SCHOOL's spiritual leader, and that [he] must maintain, foster, and enhance the SCHOOL's Catholic identity." *Id.*  The Agreement also stated that McCaul was "responsible for fostering the spiritual, academic, social, and emotional growth of [the] SCHOOL's students in the Catholic faith." *Id.*  In addition, McCaul was required to remain "an active, practicing member of the Church committed to the teachings of the Church" and to serve as "a messenger for the Church, teaching and spreading the Catholic faith." *Id.* Moreover, he was required to engage in annual "faith formation" activities. *Id.*  Further, the Agreement stated: "As part of faith formation, [McCaul] is responsible for teaching and celebrating Catholic traditions and all observances in the Liturgical Year and modelling such to students of the SCHOOL." *Id.* ¶ 8.

---

[3] Throughout the Memorandum Opinion, the Court cites to the electronic pagination. However, the electronic pagination does not always correspond to the page number imprinted on a particular submission.

Pursuant to the Agreement, McCaul also served as the School's "instructional leader", which included, *inter alia*, "administering the SCHOOL's academic program; interviewing, selecting and reviewing the performance of teachers, administrators and other School employees; reporting to and working with the pastor of the parish (in a parish school) or the School Board (in an interparish school) and Superintendent; performing the duties assigned and overseen by the Superintendent and Department of Catholic Education; [and] managing student counselling and discipline[.]" *Id.* ¶ 2.2.  McCaul was required to "complete each of the foregoing duties consistent with the SCHOOL's Catholic identity, and [was to] integrate the Church's principals [sic], ethics, values, and traditions into the completion of the foregoing duties." *Id.*  And, "as a condition of employment," McCaul was required to comply with the "[t]eachings, doctrines, ethics, and morals of the Roman Catholic Church as may be promulgated . . . by the Roman Catholic Archdiocese of Baltimore[.]" *Id.* ¶ 5.1.

Under the Agreement, the School was authorized to "discharge PRINCIPAL for Cause and thereby terminate this Agreement at any time." *Id.* ¶ 10.1.  The Agreement identified, but was not limited to, nine grounds for cause, such as "professional incompetence," violation of the Agreement, and "conduct not in keeping with the duties and leadership role of a principal in a Catholic School." *Id.*  In the event of a discharge for cause, the Agreement specified that "the exclusive remedy" available to McCaul was the right to a "prompt" review of the discharge, "in accordance with the review procedure established by the Department of Catholic Education." *Id.* ¶ 11.  Notably, the Agreement does not provide for severance or other compensation upon termination for cause.  *See id.*

On January 6, 2025, pursuant to Paragraph 3.3 of the Agreement, McCaul provided written notice to Spalding of his intent to renew his employment for the following year.  ECF 1, ¶ 9.  The

School did not respond to McCaul's renewal notice by January 31, 2025, as called for by Paragraph 3.2 of the Agreement. *Id*. ¶ 10; *see* ECF 1-3, ¶ 3.2.

Then, on March 14, 2025, a representative of Spalding verbally communicated to McCaul that his employment was terminated. ECF 1, ¶ 12. The stated reason was "a crisis of leadership at the school." *Id*. The School did not provide plaintiff with a written notice of discharge specifying the reasons for termination, as provided in Paragraph 10.3 of the Agreement. *See* ECF 1, ¶¶ 13, 16. Nor did the School advise plaintiff of his right to request a review, as provided in Paragraph 10.3 of the Agreement. *See id.* ¶¶ 13, 15, 16. Nonetheless, McCaul acknowledges in the Complaint that he was terminated for cause. *Id*. ¶ 14. He avers, *id.*: "Based on the content of the March 14, 2025, conversation and the assertions of a crisis of leadership by Archbishop Spalding, McCaul believes he was terminated for cause."

Also on March 14, 2025, the School provided McCaul with a Non-Renewal Summary, which characterized his departure as "Voluntary" and stated that, under Paragraph 3.4 of the Agreement, "Sections 10 and 11 of this Agreement regarding right to review shall not apply to non-renewals of the Agreement." ECF 1-4 at 2; *see also* ECF 1, ¶¶ 17, 18. Further, the Non-Renewal Summary provided that March 14, 2025 was the "Effective Date of Separation." ECF 1-4 at 2. And it said: "You will not be eligible to serve in a School Administration role in the Archdiocese of Baltimore." *Id.* at 3. However, McCaul declined to sign the Non-Renewal Summary. ECF 1, ¶¶ 21, 31.

In addition, on March 14, 2025, the School sent a letter to the Spalding community. ECF 1-5; *see* ECF 1, ¶¶ 22, 23. It stated that McCaul had "communicated to the School Board of Archbishop Spalding that [he would] not renew [his] contract[] for the 2025-26 academic year"

and announced a new interim principal, effective immediately.  ECF 1-5 at 2.  The Letter, signed by Board Chair Jeffrey Matton, thanked plaintiff for his contributions to the School.  *Id.*[4]

Further, McCaul alleges that he and his family were enrolled in a group health plan through Spalding, subject to the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161 *et seq*.  ECF 1, ¶ 24.  McCaul points out that COBRA requires participating employers to provide covered employees with a Continuation Coverage Election Notice following a qualifying event, and that termination of employment constitutes such an event.  *Id*. ¶¶ 24–25 (citing 29 U.S.C. § 1163).  On March 17, 2025, McCaul received the COBRA Notice (ECF 1-6), informing him of his continuation coverage rights.  *Id.* ¶ 25.  McCaul points to the COBRA Notice as confirmation of his termination on March 14, 2025.  *Id.* ¶ 27.

In late April 2025, approximately six weeks after plaintiff's termination, McCaul secured a new position as a school principal in Pennsylvania, commencing July 2025. *Id.* ¶ 32.  In July 2025, he relocated his family from Baltimore to Glenside, Pennsylvania to begin his new position. *Id.* McCaul alleges that the relocation caused him significant financial harm. *Id.* ¶ 33.

For example, plaintiff spent approximately $15,000 preparing his Baltimore home for sale and ultimately sold it for $350,000, at which time his remaining mortgage balance was $186,483.01 at a 3.75% interest rate, with a monthly payment of $2,444.63. *Id*.  However, to purchase a comparable home in Glenside, McCaul paid $564,900, financing $451,920 at an interest rate of 6.875%, resulting in a monthly mortgage payment of $4,116.88. *Id.* ¶ 34.  Additionally, he incurred approximately $9,497 in moving expenses.  *Id.*  McCaul attributes these costs to his termination, alleging that he was compelled to seek employment outside of Maryland because of the restriction in the unsigned Non-Renewal Summary, stating that he is ineligible to work in a

---

[4] The Letter also concerned another individual who was not renewing his position.

school administration role in the Archdiocese of Baltimore (ECF 1-4 at 3), and because of "fear of reputational harm" from the circumstances of his departure.  ECF 1, ¶ 29.

Despite McCaul's termination, Spalding continued to pay him his salary on a biweekly basis, through June 27, 2025, *i.e.*, the end of the 2024–25 contract year.  *Id.* ¶¶ 36, 37; *see* ECF 1-8.  Specifically, the School paid him $45,780.80.  McCaul alleges that he received payments on March 21, 2025; April 4; April 18; May 2; May 16; May 30; June 13; and June 27, 2025.  *Id.* ¶ 37.  Those are the same dates McCaul would have been paid if he were not terminated.

As noted, McCaul asserts a single claim in the Complaint based on the MWPCL.  *Id.* ¶¶ 45–48.  He contends that the Wage Act required Spalding to pay all remaining contract wages in a single lump sum on his first pay date after termination, *i.e.*, on March 21, 2025, rather than over the remainder of the academic year.  *Id.* ¶¶ 38–43.  Therefore, McCaul contends that under L.E. § 3-507.2(b) of the Wage Act, he is entitled to three times the value of the $45,780.80—the sum that McCaul asserts was due to him "at his time of termination."  *Id.* ¶ 48.  That amounts to "at least $137,342.40."  *Id.*  McCaul also seeks attorneys' fees.  *Id.* at 9.

## II.    Legal Standards

### A.  Fed. R. Civ. P. 12(b)(6)

Defendant has moved to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  *See* ECF 9; ECF 9-1.

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *Nadendla v. WakeMed*, 24 F.4th 299, 304–05 (4th Cir. 2022); *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021); *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017),

*cert. denied*, 583 U.S. 1008 (2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). Thus, "a ruling under Rule 12(b)(6) presents a pure question of law[.]" *Guzman v. Acuarius Night Club LLC*, 167 F.4th 217, 221 (4th Cir. 2026).

The "court's role under Rule 12(b)(6) is to evaluate the sufficiency of a complaint . . . ." *Doriety v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *see Brown-Hyatt v. Brenner*, SAG-25-1737, 2025 WL 2855769, at *2 (D. Md. Oct. 8, 2025) (same).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions'"); *see also Rice v. Adams,* 172 F.4th 428, 432 (4th Cir. 2026); *United States ex rel. Sheldon v. Allergan Sales, LLC*, 170 F.4th 227, 242 (4th Cir. 2026); *L.M. by Roe #1 v. Graham*, 168 F.4th 196, 200 (4th Cir. 2026); *Johnson v. Baltimore City, Maryland*, 163 F.4th 808, 814 (4th Cir. 2026); *Harmon v. Coleman Worldwide Moving, LLC*,

2025 WL 3764220, at *1 (4th Cir. Dec. 30, 2025) (per curiam); *Seabrook v. Driscoll*, 148 F.4th 264, 269 (4th Cir. 2025); *Sysco Mach. Corp. v. DCS USA Corp.*, 143 F.4th 222, 228 (4th Cir. 2025); *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021); *Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan*, 918 F.3d at 317–18; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).

A plausible claim is one that is more than merely conceivable or speculative. *Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see Sheldon*, 170 F.4th at 242. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

As the Fourth Circuit has recognized, plaintiffs are not required "to prove [their] case in the complaint." *Robertson v. Sea Pines Real Est. Cos., Inc.*, 679 F.3d 278, 291 (4th Cir. 2012) (recognizing that "[t]he requirement of nonconclusory factual detail at the pleading stage is tempered by the recognition that a plaintiff may only have so much information at his disposal at the outset"); *see Lowy v. Daniel Defense, LLC,* 167 F.4th 175, 193 (4th Cir. 2026). Furthermore, Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Indeed, it is "error" for a district judge to give "a serious claim the back of its hand" because it does not believe the plaintiff's allegations. *See Colon Health Ctrs. of Am., LLC v. Hazel,* 733 F.3d 535, 545 (4th Cir. 2013).

Rather, in considering a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from

9

those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Env't Hydrogeological Consultants, Inc. v. N. Am. Risk Servs., Inc.*, 2026 WL 674349, at *2 (4th Cir. Mar. 10, 2026); *Cooper v. City of Wheeling*, 169 F.4th 220, 223 (4th Cir. 2026); *Walls v. Prince George's Cnty.*, 2026 WL 497988, at *1 (4th Cir. Feb. 23, 2026) (per curiam); *Johnson*, 163 F.4th at 814; *Bermeo v. Andis*, 163 F.4th 87, 93 (4th Cir. 2025)*; Hebb v. City of Asheville, N. Carolina,* 145 F.4th 421, 432 (4th Cir. 2025); *Barbour v. Garland,* 105 F.4th 579, 589 (4th Cir. 2024); *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020); *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).  However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010). Nor does the court accept "'legal conclusions couched as facts . . . .'" *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (citation omitted).

"A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).  "Mere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion.  *Morrow v. Navy Fed. Credit Union*, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022); *see Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021).

That said, a plaintiff need not include "detailed factual allegations" to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). However, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted); *see Johnson v. Navy Fed. Credit Union*, 2025 WL 2437832, at *2 (4th Cir. Aug. 25, 2025) (per curiam).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678; *see Katti v. Arden*, 161 F.4th 217, 224 (4th Cir. 2025). Instead, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable, and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

Ordinarily, when ruling on a Rule 12(b)(6) motion, a court does not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023); *Bing v. Brio Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)."

*Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear [ ] *on the face of the complaint.*'" *Goodman*, 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst*, 4 F.3d at 250); *see L.N.P. v. Kijakazi*, 64 F.4th 577, 585–86 (4th Cir. 2023).

Moreover, a plaintiff may not cure a defect in a complaint or otherwise amend a complaint by way of opposition briefing. *See, e.g.*, *Henderson v. City of Roanoke*, 2022 WL 704351, at *3 (4th Cir. Mar. 9, 2022) (per curiam) ("[N]o litigant is exempt from the well-established rule 'that parties cannot amend their complaints through briefing or oral advocacy.'") (quoting *So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)); *Glenn v. Wells Fargo Bank, N.A.*, DKC-15-3058, 2016 WL 3570274, at *3 (D. Md. July 1, 2016) (declining to consider declaration attached to brief opposing motion to dismiss because, among other things, it included allegations not included in the suit); *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998). But, in civil rights cases, at the Rule 12(b)(6) stage, courts "must be especially solicitous of the wrongs alleged" and "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged*." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (internal quotations and citations omitted) (emphasis in original).

12

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448); *see Goines*, 822 F.3d at 166 (citation omitted) (a court may properly consider documents that are "explicitly incorporated into the complaint by reference . . . and those attached to the complaint as exhibits"); *see also Redding v. Noem,* 168 F.4th 203, 205 (4th Cir. 2026); *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In the usual course, the "exhibit-prevails rule" applies. It "provides that 'in the event of [a] conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails.'" *Goines*, 822 F.3d at 166 (citing *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)). However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the [party] attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff

13

attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

### B. The Wage Act

Maryland's Wage Act protects terminated employees from employers who wrongfully withhold payment of wages. *Stevenson v. Branch Banking and Trust Corporation, t/a BB & T,* 159 Md. App. 620, 635, 861 A.2d 735, 743 (2004). L.E. § 3–505(a), governing payment upon termination of employment, provides (emphasis added):

> [E]ach employer shall pay an employee . . . all wages due *for work that the employee performed before the termination of employment,* on or before the day on which the employee would have been paid the wages if the employment had not been terminated.

"The principal purpose of the Act '[is] to provide a vehicle for employees to collect, and an incentive for employers to pay, back wages.'" *Medex v. McCabe,* 372 Md. 28, 39, 811 A.2d 297, 304 (2002) (quoting *Battaglia v. Clinical Perfusionists, Inc.*, 338 Md. 352, 364, 658 A.2d 680, 686 (1995)) (alteration added). It does not focus on "the amount of wages payable but rather the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment." *Friolo v. Frankel,* 373 Md. 501, 513, 819 A.2d 354, 362 (2003).

Under the Wage Act, if an employer fails to pay an employee wages on termination of employment, "after 2 weeks have elapsed from the date on which the employer is required to have paid the wages, the employee may bring an action against the employer to recover the unpaid wages." L.E. § 3–507.2(a); *see Baltimore Harbor Charters, Ltd. v. Ayd,* 365 Md. 366, 382–83, 780 A.2d 303, 312–13 (2001). If "a court finds that an employer withheld the wages of an employee in violation of [the Wage Act] and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs." L.E. § 3–507.2(b).

14

The definition of "wages" is very broad. "Wages" is defined as "all compensation that is due to an employee for employment," including bonuses, commissions, fringe benefits, overtime wages, and "any other remuneration promised for service." L.E. § 3–501(c). Notably, "[i]t is the exchange of remuneration for the employee's work that is crucial to the determination that compensation constitutes a wage." *Provident Bank of Maryland v. McCarthy,* 383 F. Supp. 2d 858, 860 (D. Md. 2005). Put another way, in order to be considered "wages," the subject payment must be due for work the employee actually performed. *See, e.g., id.* at 861 (concluding that an imputed interest payment sought by a former employee was a "wage" within the meaning of the Wage Act, because the plaintiff's "entitlement to the Imputed Interest payment was conditioned solely upon his performance."); *Stevenson,* 159 Md. App. at 646–47, 861 A.2d at 750 (concluding that severance pay only constitutes "wages" within the meaning of the Wage Act when it represents payment for work an employee performed prior to the termination of employment).

Even if an employer is found liable for wages, the employer is not liable for statutory treble damages, attorneys' fees, or costs under the Wage Act if there is a bona fide dispute about the payment. *Ayd,* 365 Md. at 396, 780 A.2d at 320; L.E. § 3–507.2. The "existence of a bona fide dispute under [the Wage Act] is a question of fact left for resolution by the jury, not the trial judge." *Ayd,* 365 Md. at 396, 780 A.2d at 320–21.[5] As the *Ayd* Court explained, 365 Md. at 396–97, 780 A.2d at 321, "[a] finding by the jury that a bona fide dispute existed at the time of termination of employment ends any inquiry as to whether the employee would be entitled to receive additional damages according to the provisions of [the Wage Act]."

---

[5] In *Admiral Mortgage v. Cooper,* 357 Md. 533, 745 A.2d 1026 (2000), the court elucidated the definition of a "bona fide dispute." The court explained that it is "a legitimate dispute over the validity of the claim or the amount that is owing," where the employer has a good faith basis for refusing an employee's claim for unpaid wages. *Id.* at 543, 745 A.2d at 1031; *see also Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 657, 97 A.3d 621, 647 (2014).

### III.    Discussion

As noted, the School terminated McCaul for cause on March 14, 2025, approximately three months prior to the end of his Agreement.  The School's salary payments were current at the time of plaintiff's termination.  Moreover, the School paid plaintiff for the remainder of the contract period, totalling $45,780.80, by way of biweekly increments.  However, according to McCaul, he was entitled to payment of that entire sum, in full, on March 14, 2025.  Therefore, he claims that the Wage Act entitles him to treble damages of "at least $137,342.40," which is three times the value of the $45,780.80 that McCaul asserts was due to him "at his time of termination," with respect to the remaining contract period.  ECF 1, ¶ 48.

Of import, McCaul does not contest that he was paid his salary for a full contract year, and therefore received the $45,780.80 that now forms the basis of his Wage Act claim.  *Id.* ¶ 37.  Rather, he maintains that this payment was due and owing upon termination, and should have been made in a single lump sum upon his termination, instead of in installments disbursed on each payday over the remainder of his contract term.  ECF 12 at 10–11; *see* ECF 1, ¶¶ 37-41.  In particular, he asserts that the "deadline" to pay him, in full, was March 21, 2025, not June 27, 2025. *Id.* ¶¶ 40, 41.

As noted, the MWPCL requires that "each employer shall pay an employee . . . all wages due for work that the employee performed *before* the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated."  L.E. § 3-505(a) (emphasis added).  The phrase "for work that the employee performed before the termination of employment" is a "limiting phrase" embedded in the statute that cannot be disregarded.  *See Stevenson*, 159 Md. App. at 646, 861 A.2d at 750.

The decision of the Maryland Court of Appeals[6] in *Battaglia,* 338 Md. 352, 658 A.2d 680,

provides guidance.  There, the court squarely rejected the proposition that an employee can recover

salary installments "for work which he never performed . . . merely because he was willing to

perform it but was prevented from doing so."  *Id.* at 358–62, 658 A.2d at 684.  The court explained

that the MWPCL addresses "not the termination of the employment but the failure to pay 'wages

due for work that the employee performed before the termination of employment.'"  *Id.* at 362,

658 A.2d at 685 (quoting L.E. § 3-505) (emphasis added).  McCaul relies on precisely the theory

that *Battaglia* rejected.

Similarly, this Court has recognized that "severance pay only constitutes 'wages' within

the meaning of the Wage Act when it represents payment for work an employee performed prior

to the termination of employment."  *Horlick v. Cap. Women's Care, LLC*, 896 F. Supp. 2d 378,

389 (D. Md. 2011) (Hollander, J.) (citing *Stevenson*, 159 Md. App. at 646–47, 861 A.2d at 750).

In other words, based on the allegations in the Complaint, the payments made by the School

to McCaul after his termination were not wages for work he performed.  Indeed, McCaul

acknowledges that he was terminated for cause on March 14, 2025, and performed no work for

Spalding after that date.  ECF 1, ¶¶ 12, 14, 36.  Further, he acknowledges that Spalding continued

to pay him on his regular biweekly schedule through the end of his Agreement.  *Id.*

¶ 37.

---

[6] In the Maryland general election held in November 2022, the voters of Maryland approved a constitutional amendment to change the name of the Maryland Court of Appeals to the Supreme Court of Maryland.  The voters also approved a change in the name of the State's intermediate appellate court, from the Maryland Court of Special Appeals to the Appellate Court of Maryland.  These changes went into effect on December 14, 2022.  *See* Press Release, Maryland Courts, *Voter-approved constitutional change renames high courts to Supreme and Appellate Court of Maryland* (Dec. 14, 2022), https://perma.cc/TL89-QFKR.  But, I shall refer to the courts by the names that were in effect when the cited decisions were issued.

Plaintiff does not lodge a claim for breach of contract.  But, he contends that the Agreement's silence as to the forfeiture of wages in the event of a termination for cause supports his position that his full annual salary was "due" at the time of his termination.  ECF 12 at 9–10. According to McCaul: "Termination does not mandate the forfeiture of wages under the terms of the Agreement."  *Id.* at 10.  McCaul's position flies in the face of the plain terms of the Agreement and the principles of contract construction.[7]

As defendant points out (ECF 9-1 at 18), the text of the Agreement forecloses McCaul's argument.  The Employment Agreement authorized Spalding to "discharge PRINCIPAL for Cause and thereby terminate this Agreement at any time."  ECF 1-3, ¶ 10.1.  Moreover, the Agreement does not provide for severance pay or payment of salary in the event of termination for cause.  *See id.* ¶¶ 10, 11.  Rather, the Agreement provides: "Upon termination of this Agreement for any reason, no payment will be made for unused leave days other than paid vacation."  *Id.* ¶ 10.4. Further, upon a termination for cause, the Agreement clearly specifies that "the exclusive remedy" available to McCaul is his right to prompt administrative review.  *Id.* ¶ 11.

McCaul does not cite any cases that support his assertion that silence in an agreement as to payment or forfeiture of wages upon termination for cause supports entitlement to payment of wages.  In any event, the Agreement is not silent.  As noted, it plainly states that, in the event of a discharge for cause, "the exclusive remedy" available to McCaul is the right to a "prompt" review of the discharge.  *Id.* ¶ 11.  When, as here, contractual language is plain and unambiguous, a "court must presume that the parties meant what they expressed" and enforce the terms of the agreement as written.  *Taylor v. NationsBank*, 365 Md. 166, 179, 776 A.2d 645, 653 (2001); *see Kapneck 14-*

---

[7] Presumably, the parties did not address principles of contract construction or choice of law because the suit does not assert a claim for breach of contract.

18

*16, LLC v. Bkeezy's Speakeasy, LLC*, 494 Md. 75, 97, 356 A.3d 123, 137 (2026) ("If the contract language is unambiguous, we enforce the contract as plainly written.").[8]

Although plaintiff does not assert a claim for breach of contract, he complains that "Archbishop Spalding's actions violated the terms of the Agreement." ECF 12 at 3; *see* ECF 1, ¶¶ 13, 15 (citing ECF 1-3, ¶¶ 10.1, 10.3). In particular, he complains that the School "did not provide a formal written termination notice to McCaul, nor did it specify that he was terminated for cause," as required. ECF 12 at 3 (citing ECF 1, ¶ 13); *see* ECF 12 at 11. But, in the absence of a claim for breach, his contentions have little significance.[9]

Under the Agreement, McCaul was not owed the balance of his annual salary upon termination; he was owed only wages earned for work already performed, which Spalding paid him through his termination on March 14, 2025. *See* ECF 1, ¶¶ 8, 37. Even so, apparently as a gesture of goodwill, the School voluntarily paid McCaul, in full, for the remainder of the salary he would have earned had he not been terminated. And, it did so on a biweekly basis, corresponding to the time when salary payments would have been due if plaintiff had still been employed by the School. *Id.* ¶ 37.

---

[8] I cited Maryland cases because Maryland, the forum state, applies the law of the state in which the contract was formed ("lex loci contractus"), unless the parties to the contract agreed otherwise. *See, e.g., Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995). The contract was clearly formed in Maryland. And, the contract does not provide for application of the law of another state.

[9] It is evident that the School endeavored to suggest to the Spalding community that non-renewal of plaintiff as principal was a voluntary decision made by plaintiff. *See* ECF 1-5. Although McCaul now asserts that defendant failed to comply with the Agreement by failing to specify, in writing, the reasons for his termination, this would have required the School to memorialize that the termination was for cause. Presumably, McCaul preferred to cast the facts as a voluntary departure decision made by him, rather than a termination for cause by the School.

As the School puts it, "Even though [McCaul] had been fired for cause and was no longer working at the School in any capacity, Archbishop Spalding continued to pay Mr. McCaul through the end of the 'contract year' (*i.e.*, through June 30, 2025),[] as a gesture of goodwill and in appreciation for his past service to the School." ECF 9-1 at 5 (citing ECF 1, ¶¶ 36, 37). Spalding adds, ECF 9-1 at 5: "In the end, the School paid Mr. McCaul an additional $45,780.80 . . . for work that he never performed."

The payments made to McCaul after his termination were not wages for work performed. Nor were they severance payments promised under the Agreement. An employer's voluntary decision to pay a departing employee more than the law requires does not transform that gratuitous payment into a "wage" under the Wage Act.

Simply put, Spalding did not owe the money at all, and certainly did not owe it in full on March 14, 2025. The MWPCL plainly does not reach the gratuitous, voluntary payments made by Spalding after the plaintiff was terminated. On this basis, plaintiff has failed to state a claim.

In light of this determination, the Court need not reach the School's contention that the ministerial exception of the First Amendment compels dismissal of the Complaint. ECF 9-1 at 10–15. The ministerial exception presents an interesting constitutional question, particularly as applied to a Catholic school principal pressing a wage claim under State law. But, the settled principle that a court should avoid deciding a constitutional question when a case can be resolved on nonconstitutional grounds counsels against addressing the issue. *See*, *e.g., BCD LLC v. BMW Mfg. Co., LLC*, 360 F. App'x 428, 431 (4th Cir. 2010) (citing *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)). Therefore, the Court leaves for another day the question whether the ministerial exception would bar a claim of this kind.

## IV.     Conclusion

For the foregoing reasons, I shall grant the Motion and dismiss the Complaint, without prejudice.  An Order follows, consistent with this Memorandum Opinion.


Date: June 26, 2026                          _____/s/_____
                                             Ellen Lipton Hollander
                                             United States District Judge